Argued October 11; modified December 12, 1939; rehearing denied
February 14, 1940

## BARR *v.* LYNCH ET AL.

(97 P. (2d) 185)

Department 2.

*William H. Trindle*, of Salem, for appellant.

*Carl T. Pope* and *Percy A. Cupper*, both of Salem, for respondent.

BAILEY, J. The plaintiff, Theo. M. Barr, instituted this suit against Audrey Ewing and other defendants, to establish and foreclose a purported mechanic's lien against real property in Salem, Oregon, of which Mrs. Ewing was the owner in fee simple. From a decree in favor of the plaintiff, Mrs. Ewing appeals.

On February 20, 1937, Audrey Ewing entered into a contract to sell to Alice Lynch the above mentioned tract of land, on which there was a dwelling house, for the sum of $3,500, of which amount $1,000 was paid upon execution of the contract, and the balance of the purchase price was to be paid in monthly installments. Immediately after the execution of the contract Alice Lynch went into possession of the property and began

to alter and repair the building thereon, for the purpose of converting it into an apartment house.

The down payment of $1,000 was made by J. C. Thompson for and on behalf of Alice Lynch. He as agent of Alice Lynch had charge of the construction work and ordered the labor performed and the materials furnished for the alteration and repair of the building.

The owner of the land in fee, the vendor, Audrey Ewing, did not personally have anything to do with the alteration or repair of the house, and had no dealings with the lien claimant. There was nothing contained in the contract between the vendor and the vendee requiring the latter to make any repair or alteration of the house.

The vendee defaulted in the payment of monthly installments on the contract and a suit was instituted by the vendor for strict foreclosure, which resulted in the entry of a decree on October 29, 1937, barring and foreclosing all the right, title and interest of the vendee in the premises.

The respondent, Theo. M. Barr, began on or about April 22, 1937, to furnish materials and perform labor in altering and installing plumbing in the dwelling house on the property here involved, at the instance of J. C. Thompson. The last date of his furnishing materials and performing labor was June 5, 1937. On November 29, 1937, Mr. Barr filed his notice of claim of lien. In that notice it is set forth that the materials were furnished and the labor performed ''by virtue of a contract made with Alice Lynch by and through her agent, Juell C. Thompson, hereinafter designated as the builder''. Attached to this notice of claim of lien is an itemized statement setting out what the lien

claimant asserts is the contract price and reasonable value of the materials he furnished and the labor he performed. The total contract price and reasonable value is stated as $394.75, of which amount $76 is for labor performed.

Mr. Barr did not within five days after commencing to furnish materials and supplies, or at any time, give Mrs. Ewing statutory notice that he had commenced to deliver the same and that a lien therefor might be claimed by him.

Section 51-101, Oregon Code 1930, grants to "every mechanic, artisan, machinist, builder, contractor, lumber merchant, laborer * * * and other person performing labor upon or furnishing material * * * to be used in the construction, alteration or repair, either in whole or in any part of any building," a lien upon such building for the work or labor done or material furnished "at the instance of the owner of the building or other improvement, or his agent". This section defines as the agent of the owner for the purposes of the act "every contractor, sub-contractor, architect, builder or other person having charge of the construction, alteration or repair, in whole or in part, of any building or other improvement". As a condition, however, to the right to a lien, any person, firm or corporation furnishing materials or supplies "to any contractor or agent" is required, within five days after the date of the first delivery of such materials or supplies, to deliver or mail to the owner or reputed owner of the property a notice in writing, stating in substance that the person, firm or corporation has commenced delivery of materials and supplies for use thereon, setting forth the name of the contractor or agent or other person ordering the same, and stating that a lien

may be claimed for all materials and supplies so furnished.

Section 51-104, Oregon Code 1930, provides that every building or other improvement mentioned in § 51-101, *supra*, with certain exceptions, constructed upon any land with the knowledge of the owner or person having or claiming any interest therein shall be held to have been constructed at the instance of such owner or person having or claiming any interest therein, and that the interest owned or claimed shall be subject to any lien filed in accordance with the provisions of the mechanics' lien act, unless such owner or person having or claiming an interest therein shall, within three days after obtaining knowledge of the construction, alteration or repair, give notice that he will not be responsible for the same, "by posting a notice in writing to that effect in some conspicuous place upon said land or upon the building or other improvement situated thereon". An amount of land supporting and surrounding the building or other improvement, sufficient for the convenient use and occupancy of such building, belonging to the person causing such building to be constructed, altered or repaired, is made subject to the lien created by the act: § 51-102, Oregon Code 1930.

It appears from the evidence that at the time Mrs. Ewing sold the property to Alice Lynch by contract dated February 20, 1937, the dwelling house was in poor condition and needed considerable repairing in order to be made habitable; and that the agent who sold the property for Mrs. Ewing knew that the purchaser contemplated making immediately such repairs as would convert the building into a rooming or apartment house. Work was actually begun on this alteration

shortly after the date of the contract of sale, of which fact Mrs. Ewing had knowledge more than three days prior to March 21, 1937, the date on which she claims to have posted notice of non-responsibility.

Section 51-105, Oregon Code 1930, as amended by chapter 16, Oregon Laws 1937, makes it the duty of every original contractor, within 60 days after the completion of his contract, and of every mechanic, artisan, machinist, builder, lumber merchant or other person, save the original contractor, claiming the benefit of the mechanics' lien act, within 30 days after completion of the construction, alteration or repair, to file his notice of claim of lien.

The questions here before us for decision may be briefly stated as follows: 1. Did the failure of Mr. Barr to give statutory notice to Mrs. Ewing deprive him of (a) a right of lien against her interest in the real property for the entire amount claimed by him, or (b) only his right to claim a lien for materials furnished by him? 2. Is Mr. Barr to be considered as an original contractor in relation to Mrs. Ewing and be required to have filed his notice of claim of lien within 60 days from the completion of his contract, in order to subject her interest in the land to his lien, or was it incumbent upon him to file his notice of claim of lien within 30 days after the completion of the alteration and repairs on the building, as required of ''every mechanic, artisan, machinist, builder, lumber merchant, laborer, or other person, save the original contractor, claiming the benefit'' of the mechanics' lien law?

■ The mechanics' lien law does not define the term ''original contractor''. This court, however, in numerous decisions has held that an original contractor within

the meaning of the mechanics' lien law is one who, furnishes labor or materials and labor on a contract direct with the owner: *Shea v. Graves*, 142 Or. 503, 510, 19 P. (2d) 406; *James A. C. Tait & Company v. Stryker*, 117 Or. 338, 243 P. 104, as corrected in 118 Or., page xxxvi; *Heacock Sash & Door Co. v. Weatherford*, 135 Or. 153, 294 P. 344; *Prouty Lumber & Box Co. v. McGuirk*, 156 Or. 418, 66 P. (2d) 481, 68 P. (2d) 473; *Bernard v. Hassan*, 60 Or. 62, 118 P. 201.

■ At the time Mr. Barr was engaged to, and did, furnish materials and perform labor on the dwelling house in question, Alice Lynch was purchasing the property under a contract and was in possession of it. She was, within the meaning of the mechanics' lien law, an owner, and her interest in the property was subject to a mechanic's lien: *Schram v. Manary*, 123 Or. 354, 260 P. 214, 262 P. 263.

■ It may be assumed that so far as Alice Lynch was concerned Mr. Barr was an original contractor. His contract was made with her through her agent, J. C. Thompson. Mr. Barr was entitled to recover from Alice Lynch personally on the basis of his agreement with her, and on the same basis he had a right to claim a lien against her interest in the property. The circuit court did, in fact, enter judgment against her personally for all but $0.75 of the full amount of Mr. Barr's claim, together with attorney's fees and costs. Mr. Barr was not required, in order to subject her interest in the realty to a lien for both materials and labor, to notify her when he began to furnish materials: *Shea v. Peters*, 126 Or. 76, 268 P. 989; § 51-101, *supra*. This section (51-101) does not require such notice from the contractor, but only from those who furnish materials to the contractor or to the statutory agent of the owner.

■ Prior to the time when Mr. Barr filed his notice of lien Alice Lynch's interest in the property had been foreclosed, and he is now attempting to subject Mrs. Ewing's interest to his purported lien. It is apparent that since Mrs. Ewing did not contract directly with Mr. Barr and had no direct dealings with him concerning the alteration and repair of the dwelling house, she does not stand in the same relation to him that Alice Lynch did. Mr. Barr would not be entitled to recover from Mrs. Ewing personally for his materials and labor, and in no event would he be entitled to a lien against her interest in the property for more than the reasonable value—as distinguished from the contract price—of the materials furnished and the labor performed by him.

■■ Inasmuch as Mr. Barr did not contract directly with Mrs. Ewing or with her common-law agent, it was incumbent upon him, if he would subject her interest in the real property to a lien for materials furnished, to notify her within five days from the time he commenced to deliver such materials: § 51-101, *supra; Shea v. Peters,* supra; *Lorenz v. Pilsener Brewing Co.,* 159 Or. 552, 81 P. (2d) 104. The failure of Mrs. Ewing to post on the premises a notice of non-responsibility, if she did so fail, as contended by Mr. Barr, did not relieve him of the necessity of sending her notice of commencing to furnish materials. The statute, § 51-101, *supra,* explicitly provides that "no materialmen's lien for material or supplies furnished to the contractor or the agent of any owner or reputed owner shall be enforced unless" the requirement as to sending notice has been met. It is apparent that if Mr. Barr is to be considered a "contractor" with reference to Mrs. Ewing, within the meaning of the language of § 51-101, *supra,* just

quoted, then he was under no obligation to notify her within five days after he started to deliver materials to the premises, in order to acquire a right of lien against her property for the materials so furnished. It is solely because of the fact that he was not a contractor so far as Mrs. Ewing's interest in the property is concerned that he was obliged, according to the interpretation this court has in numerous similar instances placed upon that section, to give notice to her when he began to deliver materials. Because he failed to give that notice, he is not entitled to a lien for materials which he furnished.

■ It is urged by counsel for Mr. Barr that even though he be found not entitled to a lien for materials, he still has a right of lien under § 51-101, *supra,* against Mrs. Ewing's interest in the property for the reasonable value of labor performed by him, since the lien notice sets forth separately the reasonable value of such labor. This is a correct view of the law, if his relationship to Mrs. Ewing was not that of an original contractor. In *Christman v. Salway*, 103 Or. 666, 205 P. 541, this court held that when labor is performed and materials are furnished ''at the instance of the contractor of the owner, and not to the owner himself, or to a common-law agent of the owner, the law fixes the amount for which a lien may be had, as the reasonable value of the labor or materials, and not the price which the contractor agreed to pay therefor'', and that in such case if the right to a lien for materials had been lost, nevertheless the claimant would be entitled to a lien for the reasonable value of labor performed by him. In discussing this matter further, the court said, with reference to the claim of right of lien by the sub-contractors in that case:

"It is utterly impossible to ascertain or state from the contracts themselves what proportion of the contract price was agreed to be paid for either labor or material, as the contracts themselves provide no way in which that fact can be ascertained or determined. But we think this fact is wholly unimportant because the owner whose property is sought to be charged with the lien was not a party to these contracts, nor personally obligated to pay the contract price, or any proportionate part thereof; nor is his property chargeable with a lien for the entire, or any proportional part of the price which the contractor agreed to pay for the labor and material."

The court therein also pointed out the differences between sub-contracts and original contracts with the owner, in the following language:

"If the contracts had been made with the owner, or with some common-law agent of the owner, the amount for which liens would be given would be determined by the contract price. In such cases, if the right to a lien for a part of that which was to be furnished for an entire consideration failed, and there was no way to determine from the contracts themselves what proportion of the contract price was to be paid for the remainder, there could be no lien for the whole, or for any part. But as these contracts were not made with the owner, nor with any person who had authority to bind him to pay the contract price, and as his property is not chargeable for the contract price or for any proportional part thereof, but only for the reasonable value of the labor performed, there can be no necessity to apportion the contract price between labor and material, nor do we see any reason why the contract price should be considered at all in determining the amount for which the claimants should have a lien. Here all the claimants are seeking is the reasonable value of the labor performed. This is easily susceptible to proof. It is only necessary for the court to inquire and ascertain what is a fair compensation for the work done, according to the usual

method of determining the question of a *quantum meruit* in judicial proceedings.''

In the instant case there is no evidence in the record to enable the court to determine from the contract between Barr and Alice Lynch what ''proportion of the contract price was agreed to be paid'' for labor, or how much for material.

■ Our decision that Mr. Barr was required to notify Mrs. Ewing within five days after he commenced to furnish materials, in order to subject her interest in the realty to his claim of lien, and that in the event that he failed to give such notice he nevertheless had a right to a lien for the reasonable value of labor performed by him, is predicated on the theory that as to Mrs. Ewing and her interest in the land he was not an original contractor. In view of his right to a lien for labor performed, because he is not an original contractor so far as Mrs. Ewing is concerned, it necessarily follows that the time within which he was required to file notice of claim of lien as to her interest in the land was not governed by the provision relating to the filing of such notice by an original contractor, but by the requirement of § 51-105, *supra*, that ''every mechanic, artisan, machinist, builder, lumber merchant, laborer, or other person, save the original contractor,'' must file his notice of lien within thirty days after the completion of the ''improvement'' upon which he performs labor. He cannot be an original contractor in relation to Mrs. Ewing for one purpose and not for all purposes.

The statute, § 51-101, *supra*, does not limit the right of lien to the original contractor, sub-contractor and materialman. It grants to ''every mechanic, artisan, machinist, builder, contractor, lumber merchant, la-

borer, teamster, drayman and other persons performing labor upon or furnishing material, or transporting or hauling material of any kind to be used in the construction, alteration or repair either in whole or in part of any building", such right of lien. The legislature undoubtedly saw that it was impossible to designate each person entitled to a lien. Moreover, in the same section it is further provided that "every contractor, sub-contractor, architect, builder or other person having charge of the construction, alteration or repair" of any building "shall be held to be the agent of the owner for the purpose of this act".

■ No one can question that the person in charge of the alteration and repair of the building here involved was Mr. Thompson, who, as already stated, was the agent of Alice Lynch. Mr. Barr is attempting to subject Mrs. Ewing's property to his lien on the theory that he furnished materials and performed labor at the instance of Mrs. Ewing, through her statutory agent, Alice Lynch. It is self-evident that under our mechanics' lien law no one furnishing materials or performing labor, or doing both, at the instance of the statutory agent of the owner of the property, can hold the relationship of original contractor as to the owner.

In *Bernard v. Hassan*, supra, the lien claimant was attempting to hold both the interest of the tenant and that of the owner. The court did not therein essay to define the word "owner" within the meaning of the mechanics' lien law, but it is apparent from the conclusion reached that Mrs. Hassan, the tenant, was regarded by the court as coming within the statutory meaning of "owner".

*Walsh v. Nelson*, 63 Or. 84, 126 P. 606, was a suit to foreclose a mechanic's lien for materials furnished

and labor performed in the construction of a building at the instance of Nelson, the lessee. Although Chase, the owner in fee of the premises in question, was named as one of the defendants, he was not served with summons, and this court observed that, "hence he is not to be further considered".

Alice Lynch's interest in the property here involved was foreclosed by a decree entered October 29, 1937. At that time she had not completed the alteration and repairs undertaken by her. On the date the decree was entered, however, she permanently abandoned all such alteration and repairs. Since the construction was not completed, Mr. Barr, who was not an original contractor so far as Mrs. Ewing was concerned, would have thirty days after the permanent abandonment of construction to file a claim of lien for labor performed by him: *James A. C. Tait & Company v. Stryker*, supra; *Drake v. Riley*, 139 Or. 172, 9 P. (2d) 130. The claim of lien was filed on November 29, 1937, within thirty days of the abandonment of the work of altering and repairing the building. Inasmuch as November 28, which was actually the thirtieth day (*Horn v. U. S. Mining Co.*, 47 Or. 124, 81 P. 1009), fell on Sunday, the claimant had the following day in which to file his notice of lien: § 7-109, Oregon Code 1930.

The record shows that Mr. Barr did perform labor in alteration and repair of the dwelling house, of the reasonable value of $76, and therefore his lien to that extent was properly established and foreclosed.

It has already been pointed out that Mrs. Ewing did not post notice of non-responsibility within three days after obtaining knowledge of the alteration and repair of the building. Therefore, even though she did

post such notice on March 21, as she contends, her property still remained subject to a lien for labor per-formed by Mr. Barr: *Gabriel Powder & Supply Company v. Thompson et al.*, this day decided.

At the time of the oral argument motion was made by the respondent to dismiss this appeal, on the ground that Mrs. Ewing had conveyed the real property to one Reimann and therefore was not the real party in interest. Mr. Reimann testified at the trial, which was commenced July 14, 1938, that he had some two or three months prior thereto purchased the property. This suit was instituted January 24, 1938, long prior to the date of the conveyance to Reimann. Even if Mrs. Ewing no longer had any interest in the litigation, however, the appeal could have been prosecuted in her name by Mr. Reimann, and no substitution of parties would have been required: *In re First & Farmers National Bank*, 145 Or. 150, 26 P. (2d) 1103.

The decree of the circuit court in favor of Theo. M. Barr is modified as above indicated and one here entered in his favor in the sum of $76, together with from October 29, 1937, also the sum of $3 for filing and interest thereon at the rate of six per cent per annum recording the notice of lien, $50 as attorney's fees, and costs allowed Mr. Barr in the circuit court in the sum of $39.80. No costs in this court will be allowed to either party.

RAND, C. J., and LUSK, J., concur.

BELT, J. (concurring in the result). In my opinion, Barr was an original contractor having dealt directly

·with an "owner" within the meaning of the mechanic's lien law: *Bernard v. Hassan*, 60 Or. 62, 118 P. 201; *Schram v. Manary*, 123 Or. 354, 260 P. 214, 262 P. 263; *Freidenbloom v. Pecos Valley Lumber Co.*, 35 N. Mex. 154, 290 P. 797; *Albuquerque Lumber Co. v. Tomei*, 32 N. Mex. 5, 250 P. 21.

I concur in the result.